UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD THIBEAUX JR ET AL** | **CASE NO. 6:21-CV-01235** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **STARR INDEMNITY & LIABILITY CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

The present matter before the Court is the Second Motion for Summary Judgment filed by defendant Starr Indemnity & Liability Co. ("Starr" or "Starr Indemnity") [ECF No. 38]. After considering the summary judgment record, the parties' arguments, and the relevant authorities, the Court rules as follows.

## I.
### BACKGROUND

This case arises out of an accident on October 20, 2020, involving a company automobile driven by plaintiff Richard Thibeaux, Jr. from his home in Louisiana to his worksite in Texas.[1] Thibeaux's vehicle collided with a vehicle and trailer parked along I-10 near Vidor, Texas.[2] Thibeaux was severely injured in the accident and his passenger, Jaylon Harrison, was fatally injured.[3] Jose Soriano was the driver of the parked vehicle and trailer. Soriano's vehicle was parked on the shoulder of the highway, but part of his trailer extended out into the roadway.[4] Plaintiffs recovered the policy limits on Soriano's insurance policy.[5] Plaintiffs now seek recovery from

---

[1] ECF No. 1-2 at pp. 1 - 2.
[2] *Id.*
[3] *Id.* Plaintiff Shannon Harrison is suing on behalf of the decedent, Jaylon Harrison. The Court refers to Harrison and Thibeaux as "Plaintiffs."
[4] *Id.* at p. 2.
[5] *Id.* at p. 3.

1

defendant Starr Indemnity, which issued a commercial automobile insurance policy to Duphil Inc., Thibeaux's employer and the owner of the vehicle Thibeaux was driving at the time of the accident. Starr Indemnity issued two policies to Duphil that were in force at the time of the accident: a commercial automobile insurance policy, Policy Number 10001989122010 (the "2020 Policy"),[6] and a commercial general liability ("CGL") policy, Policy Number 1000090519201.[7] Starr Indemnity had also issued a commercial automobile insurance policy to Duphil covering the period October 1, 2019 through October 1, 2020 (the "2019 Policy").[8] With respect to both the 2019 and 2020 Policies, Duphil executed Texas and Louisiana waiver forms rejecting underinsured/uninsured motorist ("UIM/UM") coverage.[9] Plaintiffs seek recovery under the uninsured and/or underinsured coverage provision of the 2020 Policy.

The parties filed cross-motions for summary judgment at the inception of the case, and the Court denied both motions given the presence of genuine questions of material fact.[10] The Court also noted that Plaintiffs did not have an opportunity to engage in meaningful discovery in connection with that motion. The parties proceeded with discovery and, at the close of discovery, Starr Indemnity filed its second motion for summary judgment arguing that Duphil rejected UIM/UM coverage when it procured the 2019 and 2020 Policies from Starr Indemnity. Accordingly, Starr Indemnity argues that Plaintiffs are not entitled to recover UIM/UM benefits under Duphil's policies as a matter of law.

---

[6] ECF No. 38-24.
[7] ECF No. 38-40.
[8] ECF No. 38-23.
[9] ECF No. 38-7 at 26, 27.
[10] ECF No. 26.

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[11] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[13] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[14]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[15] "Credibility determinations are not part of the summary judgment analysis."[16] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[11] Fed. R. Civ. P. 56(a).
[12] *Id.*
[13] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[14] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[15] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[16] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[17]

## III.
## LAW AND ANALYSIS

As an initial matter, Plaintiffs appear to argue the applicability of Louisiana law. A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state.[18] When determining which state's law to apply, a federal court applies the choice-of-law rules of the state where the court sits.[19] The Court conducted a choice-of-law analysis in connection with Starr Indemnity's first motion for summary judgment and concluded that Texas law applies to the present dispute.[20] The Court will not re-visit this choice-of-law determination.

Starr Indemnity correctly states Texas law governing UIM/UM coverage. Section 1952.101 of the Texas Insurance Code provides that:

> (b) An insurer may not deliver or issue for delivery in this state an automobile liability insurance policy, including a policy provided through the Texas Automobile Insurance Plan Association under Chapter 2151, that covers liability arising out of the ownership, maintenance, or use of any motor vehicle unless the insurer provides uninsured or underinsured motorist coverage in the policy or supplemental to the policy.
>
> (c) The coverage required by this subchapter does not apply if any insured named in the insurance policy rejects the coverage in writing. Unless the named insured requests in writing the coverage required by this subchapter, the insurer is not required to provide that coverage in or supplemental to a reinstated insurance policy or renewal insurance policy if the named insured rejected the coverage in connection with that insurance policy or an insurance policy previously issued to the insured by the same insurer or by an affiliated insurer.[21]

---

[17] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[18] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938).
[19] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014).
[20] ECF No. 26 at 7.
[21] Tex. Ins. Code Ann. § 1952.101 (West).

4

This provision requires that automobile insurers in Texas provide UIM/UM coverage in all policies. This mandate reflects "the state's interest in protecting conscientious and thoughtful motorists from financial loss."[22] The statute, however, provides an exception to this requirement where the insured expressly rejects UIM/UM coverage. That rejection must be made in writing and must "be strictly construed to protect the insured."[23] The Code's requirement that the waiver be in writing is mandatory, but "the statute does not require a special procedure or special language for the writing, and execution of a satisfactory written rejection requires only minimal effort by the insured."[24]

Here, Plaintiffs point to an endorsement in the 2020 Policy providing for Texas UIM/UM coverage and argues that this coverage was not properly rejected under Texas law.[25] Starr Indemnity, in turn, points to the two Texas UIM/UM waiver forms executed by a representative of Duphil. The summary judgment record supports Starr Indemnity's position that UIM/UM coverage is not available as a matter of law based on the Texas waiver forms.

First, the presence of a Texas UIM/UM endorsement in the 2020 Policy is not dispositive of coverage. Plaintiffs place significant weight on this endorsement, suggesting that the Court's analysis should go no further than the endorsement. However, as Starr Indemnity points out in its Motion, the Texas Insurance Code mandates that this coverage be included in Texas-issued insurance policies but also permits the insured to reject coverage.[26] Accordingly, the dispositive question is not the presence of the endorsement but the validity of the waivers.

Second, the 2019 and 2020 Texas UIM/UM waiver forms executed by Duphil satisfy the requirements of the Texas Insurance Code. The Code requires only that the rejection of coverage

---

[22] *Ortiz v. State Farm Mut. Auto. Ins. Co.*, 955 S.W.2d 353, 356 (Tex. App.—San Antonio 1997, writ denied); *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 128 (Tex. 2004).
[23] *Howard v. INA Cnty. Mut. Ins. Co.*, 933 S.W.2d 212, 218 (Tex. App.—Dallas 1996, writ denied).
[24] *Emps. Cas. Co. v. Sloan*, 565 S.W.2d 580, 582 (Tex. App.—Austin 1978, writ ref'd n.r.e.).
[25] ECF No. 38-21 at 8.
[26] Tex. Ins. Code Ann. § 1952.101 (West).

5

be in writing.[27] Sub-part B to the 2019 and 2020 waiver forms executed by Duphil include the language: "If you wish to reject Uninsured/Underinsured Motorists Coverage, you may do so by initialing and signing below."[28] Sub-part B of both forms also includes blanks for the named insured to sign and initial the forms next to language stating: "I reject Uninsured/Underinsured Motorists Coverage."[29] On both of the Texas waiver forms in the record, Jennie Scalfano signed and initialed sub-part B as President of Duphil.[30] The waiver forms at issue thus specifically refer to UIM/UM coverage, and state that Duphil is rejecting coverage. The Texas Insurance Code requires no additional "special procedure or special language" to reject coverage.[31]

Third, Plaintiffs' argument that the coverage rejection forms are ambiguous and thus not a clear and unequivocal rejection of UIM/UM coverage is not supported by the summary judgment record. Specifically, Plaintiffs argue that the UIM/UM waivers were not attached to the 2019 or 2020 Policies and that the only link between the waivers in the record and the applicable policy is the policy number identifier on the waiver forms. With respect to the 2020 waiver form—which applies to the policy that was in force at the time of the accident—the form erroneously lists the policy number for Duphil's CGL policy instead of its commercial automobile insurance policy.[32] The 2019 waiver form does not reference a policy number.[33] Section 1952.101 of the Texas Insurance Code does not, however, expressly require that a valid UIM/UM coverage waiver include the policy number to which the waiver applies. Nor does the statute expressly require that the waiver be attached to the policy.

---

[27] *Id.*
[28] ECF No. 38-7 at 29.
[29] *Id.*
[30] *Id.*; ECF No. 38-7 at 27.
[31] *Sloan*, 565 S.W.2d at 582.
[32] ECF No. 38-7 at 28.
[33] ECF No. 38-7 at 26.

While Texas courts have held that the waiver exception to the UIM/UM coverage requirements should be strictly construed, they have rejected similar attempts to read additional requirements into the statute. For example, in *Ortiz*, the court rejected an argument that the written waiver of UIM/UM coverage required by the Texas Insurance Code must be "attached to or incorporated in the policy."[34] According to the court, the statute only requires that the rejection be in writing, and that "[a]dding language to these unambiguous provisions by specifying the procedures to effectuate a written rejection would unnecessarily intrude upon the province of the legislature."[35] Instead, Texas courts only require that the waiver "be written in clear and express language, demonstrating that the insured has some knowledge of what he is rejecting."[36] Here, the waivers in the summary judgment record include written language that expressly refers to UIM/UM coverage and unequivocally rejects that coverage.[37] The statute requires nothing more.[38] The fact that the waiver forms either misidentify or omit the relevant policy numbers does not change the fact that Duphil's rejection of UIM/UM coverage is clear and unambiguous.

The discovery submitted with the Motion for Summary Judgment also supports the validity of the Texas waiver forms in the record. The record includes the deposition testimony of Jennie Scalfano explaining that she executed both UIM/UM coverage waiver forms of behalf of Duphil and that she intended to reject UIM/UM coverage with respect to the 2019 and 2020 Policies.[39] With respect to the incorrect policy number on the 2020 waiver form, Scalfano testified that the form incorrectly lists the policy number of Duphil's CGL policy, which provides no automobile

---

[34] 955 S.W.2d at 356.
[35] *Id.*
[36] *Id.* at 358-59 (citing *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex.1978)).
[37] ECF No. 38-7 at 27, 29.
[38] *Ortiz*, 955 S.W.2d at 356; *Sims v. Standard Fire Ins. Co.*, 781 S.W.2d 328, 330–31 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (holding that a written waiver stating "You further agree that this endorsement will also serve as a rejection of Uninsured/Underinsured Motorists Coverage and Personal Injury Protection Coverage ..." constitutes a clear and express rejection).
[39] ECF No. 38-6 at 14 – 16, 17 – 18.

coverage—UIM/UM or otherwise.[40] Scalfano also testified that Duphil did not pay a premium to Starr Indemnity for UIM/UM coverage.[41] The record also includes the testimony of Heather Perdue, a broker with Edgewood Partners Insurance Center ("EPIC"), who worked with Duphil to procure the CGL and commercial automobile insurance policies at issue from Starr Indemnity.[42] Perdue testified that the CGL policy number on the 2020 waiver form was a clerical mistake, and that the incorrect policy number was entered by EPIC.[43] She and Scalfano testified that the UIM/UM waiver forms executed by Duphil apply to the 2019 and 2020 Policies.[44]

Finally, Plaintiffs' reliance on *Howard v. INA Cnty. Mut. Ins. Co.*,[45] is misplaced. Citing *Howard*, Plaintiffs argue that Scalfano's testimony that she intended to reject UIM/UM coverage on behalf of Duphil is irrelevant absent a validly executed written waiver. *Howard* is distinguishable. In *Howard*, the named insured was the plaintiff's employer, and the plaintiff was injured in an accident while driving the employer's vehicle.[46] As in the present case, the plaintiff sought to recover UIM/UM benefits under the employer's commercial automobile insurance policy.[47] Unlike the present case, however, when the employer procured that policy, an agent of the employer signed the relevant portion of the coverage selection form but failed to indicate, in writing, whether the employer was accepting or rejecting UIM/UM coverage.[48] After the accident, the employer signed a form ***retroactively*** rejecting UIM/UM coverage and the insurer argued that

---

[40] *Id.* at 26 – 27.
[41] *Id.* at 19; The fact that the 2020 Policy did not include a premium payment for UIM/UM coverage does not, standing alone, defeat coverage. However, the lack of a UIM/UM premium in the 2020 Policy is consistent with Starr Indemnity's argument that the 2020 coverage waiver was executed in connection with the 2020 Policy and that Duphil clearly and unambiguously rejected coverage in connection with that policy despite the presence of the required UIM/UM endorsement.
[42] ECF No. 38-40 at 22 -23, 26 – 27.
[43] *Id.*
[44] *Id.*; ECF No. 38-6 at 14 – 16, 17 – 18.
[45] 933 S.W.2d 212.
[46] *Id.* at 215.
[47] *Id.*
[48] *Id.*

8

the policy should be reformed to reflect the insured's intent to reject coverage.[49] The insurer did not dispute that there was no written rejection of UIM/UM coverage at the time of the accident as required by section 1952.101 of the Texas Insurance Code. The court held that the insured could not retroactively reject coverage based solely on evidence that the insured had intended to reject coverage at the time but did not memorialize that intent in a written rejection.[50] Here, in contrast, Scalfano not only signed the waiver forms but also indicated, *in writing*, that Duphil was rejecting UIM/UM coverage. As explained above, that is all the Texas Insurance Code requires.

In sum, the summary judgment record establishes that the UIM/UM coverage waivers, executed on behalf of Duphil are valid, and that they eliminated UIM/UM coverage with respect to Plaintiffs' accident. Starr Indemnity is, therefore, entitled to summary judgment on Plaintiffs' claims seeking UIM/UM benefits under the Starr Indemnity commercial automobile insurance policies issued to Duphil.

## III.
### CONCLUSION

Considering the foregoing, Starr Indemnity's Second Motion for Summary Judgment [ECF No. 38] is **GRANTED**. Plaintiffs' claims against Starr Indemnity are **DISMISSED** with prejudice.

THUS DONE AND SIGNED in Chambers this ___7th___ day of July, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[49] *Id.* at 216.
[50] *Id.* at 219 – 220.